**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 26-cv-00571-NYW-STV

SPECTRUM RETIREMENT COMMUNITIES, LLC,
PARK MEADOWS SENIOR LIVING, LLC,
SF OVERLAND PARK, LLC, and
SRC OF KANSAS, LLC,

Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY,

Defendant.

---

## ORDER ON MOTION TO TRANSFER VENUE

---

This matter is before the Court on the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion" or "Motion to Transfer Venue"). [Doc. 27]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file, and concludes that oral argument would not assist in the resolution of this matter. For the reasons set forth below, the Motion is respectfully **DENIED**.

## BACKGROUND

The Court draws the following facts from the First Amended Complaint for Breach of Contract, Declaratory Judgment, Insurance Bad Faith, Unjust Enrichment, and Jury Demand (the "Amended Complaint") and takes them as true for purposes of this Order. [Doc. 14]. Spectrum Retirement Communities, LLC; Park Meadows Senior Living, LLC; SF Overland Park, LLC; and SRC of Kansas, LLC (collectively, "Plaintiffs") directly or indirectly own, operate, and/or manage a senior living community known as Aventura

Senior Living at Overland Park (the "Community"). [*Id.* at ¶ 15]. On January 21, 2024, following repairs to a sprinkler system in one of the Community buildings, the sprinkler system froze and caused flooding and water damage (the "Incident"). [*Id.* at ¶¶ 32–36]. Prior to the Incident, The Travelers Indemnity Company ("Defendant" or "Travelers"), a Connecticut insurance company, issued a property and business income insurance policy to Plaintiffs that was in effect at the time of the Incident (the "Policy"). [*Id.* at ¶¶ 67–68].

Plaintiffs allege that Travelers wrongfully failed to pay or denied coverage for business income and rental value losses, amounts paid to preexisting employees or new employees, SAP fees, and fire alarm repair expenses. [*Id.* at ¶ 98]. Plaintiffs filed this case in the District Court for the City and County of Denver on January 14, 2026, [Doc. 5], and Defendant removed the case to federal court on February 12, 2026, [Doc. 1]. In their Amended Complaint, Plaintiffs assert six claims: (1) a breach of contract claim; (2) a bad faith claim under Colorado common law; (3) a bad faith claim under Colo. Rev. Stat. § 10-3-115; (4) a claim for unjust enrichment; (5) a claim for declaratory judgment; and (6) a claim for attorney's fees under Kan. Stat. Ann. § 40-256. On April 10, 2026, Defendant moved to transfer the case to a different venue under 28 U.S.C. § 1404(a), arguing that this case belongs in Kansas. [Doc. 27].

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party seeking transfer "bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509,

1515 (10th Cir. 1991). "Merely shifting the inconvenience from one side to the other" does not support transfer. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quotation omitted). The Court considers the following factors when deciding whether to transfer a case under § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (quotation omitted). Pendency of related litigation in a different forum is also a relevant factor to consider when evaluating transfer. *See, e.g.*, *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1262 (D. Kan. 2004).

## ANALYSIS

Defendant asks the Court to transfer this case to the United States District Court for the District of Kansas, arguing that the relevant factors weigh in favor of transfer. [Doc. 27 at 3–4]. Plaintiffs oppose transfer. [Doc. 39 at 5–6]. Therefore, the Court must consider whether the factors set out in *Chrysler Credit Corporation* weigh in favor of transferring this case.

### I. Plaintiff's Choice of Forum

A plaintiff's choice of forum "should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quotation omitted). However, a plaintiff's choice of forum is accorded little weight where there is no "material relation or significant connection" between the facts giving rise to the lawsuit and the plaintiff's chosen forum. *Bartile Roofs*, 618 F.3d at 1168 (quotation omitted). In a breach of contract action, the relevant factors

for assessing venue include "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Bartch v. Barch*, No. 18-cv-03016-MSK-NYW, 2019 WL 2208475, at *4 (D. Colo. May 22, 2019) (quotation omitted). "When a breach of contract occurs by means of communication between two states, events occur just as much in either location." *Id.*

Defendant contends that this Court should not defer to the Plaintiffs' choice of forum due to the lack of a significant connection between this case and Colorado. [Doc. 27 at 6–7]. In so arguing, Defendant relies primarily upon *DP Precise, LLC v. Phoenix Insurance Co.*, No. 12-cv-03001-REB-CBS, 2013 WL 2378561 (D. Colo. May 30, 2013), which it argues is "highly instructive." [Doc. 27 at 6]. *DP Precise* involved a suit for breach of insurance contract and bad faith arising from an incident of theft and vandalism. *Id.* at *1. In *DP Precise*, the action was brought in Colorado, but the properties covered by the insurance policy were located in Michigan, the vandalism giving rise to the claims occurred in Michigan, and the plaintiff was a Michigan limited liability company. *Id.* at *1–2. Notably, in *DP Precise*, the only connection to Colorado was that the defendant interacted with the plaintiff—whose principal place of business was in Colorado—in investigating and processing insurance claims. *Id.* at *2.

In response to Defendant's arguments, Plaintiffs rely upon *Wade v. Wesco Insurance Co.*, No. 23-cv-02917-NYW-MDB, 2024 WL 2274085 (D. Colo. May 20, 2024), which they argue is "on point." [Doc. 39 at 8]. *Wade* involved claims of negligence, breach of insurance contract, and bad faith arising from a motor vehicle accident. *Id.* at *1. In *Wade*, this Court determined that a substantial part of events giving rise to a claim occurred in Colorado where: (1) a defendant allegedly breached a contract in Colorado

via communications of claim denial; and (2) a plaintiff received partial payment from the defendant in Colorado. *Id.* at *6–7.

Here, the communications between Plaintiffs and Defendant are far more substantial than those implicated in *DP Precise* and present greater similarity to *Wade*. Plaintiffs allege that the following events occurred in Colorado: (1) Policy negotiation and delivery; (2) realization of business income losses and other damages; and (3) communications regarding claims for coverage and denial of claims. [Doc. 14 at ¶¶ 71–73; Doc. 39 at 8–9]. Defendant does not meaningfully contest these assertions. *See* [Doc. 49]. These circumstances go beyond both the mere investigation and processing of claims in *DP Precise* due to the additional realization of losses and Policy negotiations present in this case. Therefore, the Court respectfully disagrees with Defendant that no substantial events appropriate to maintain venue occurred in Colorado. Accordingly, this Court is not persuaded that Plaintiffs' choice of forum should be accorded less weight than is typical and finds that Plaintiffs' choice of forum weighs against transfer.

## II. Accessibility of Witnesses and Other Sources of Proof

### A. Accessibility of Witnesses

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993). To demonstrate inconvenience to witnesses, the movant must: (1) identify the witnesses and their locations; (2) indicate "the quality or materiality of" the witnesses' testimony; and (3) show that the witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process

would be necessary. *Bartile Roofs*, 618 F.3d at 1169 (quotation omitted). The convenience of non-party witnesses tends to weigh more heavily when considering accessibility of witnesses than the convenience of parties and their employees. *Bovino v. Incase Designs Corp.*, No. 13-cv-02106-WJM-MJW, 2014 WL 1796914, at *2 (D. Colo. May 6, 2014); *Potter Voice Techs. LLC v. Apple, Inc.*, No. 12-cv-01096-REB-CBS, 2013 WL 1333483, at *2 (D. Colo. Mar. 29, 2013); 15 Wright & Miller's Federal Practice & Procedure § 3851 (4th ed. 2026).

Defendant argues that the location of six non-party witnesses supports transfer: the Kansas Department for Aging and Disability Services ("KDADS"), two technicians associated with Johnson Controls Fire Protection, LP ("JCFP"), Jayhawk Fire Sprinkler, Co., Inc. ("Jayhawk"), Phillip Keena ("Keena"), and Rick Ellsworth ("Ellsworth"). [Doc. 27 at 9–12]. Four identified potential witnesses appear to reside within the state of Kansas. [*Id.*]. One witness, a JCFP technician, although a resident of Missouri, would be within Kansas's subpoena power if this Court were to transfer, as that witness resides in Smithville, Missouri. [*Id.* at 11]. Defendant does not indicate the other JCFP technician's location beyond stating "it appears likely that the JCFP personnel who performed the repairs at issue are local technicians operating in and around the Kansas City area." [*Id.*]. Defendant further represents that it will produce its own representatives at trial, hearings, and other matters in Kansas. [*Id.* at 14].

Regarding materiality of testimony, with respect to KDADS, Defendant asserts that KDADS will likely provide testimony regarding the waiver request, as well as "the nature and scope of any waiver request, and the agency's reasoning for denying the waiver at issue in this lawsuit." [*Id.* at 10]. Defendant predicts JCFP witnesses will provide

testimony about "the repair work performed, the condition of the system, and the cause of the flood." [*Id.* at 10–11]. Defendant asserts that Jayhawk is likely to provide "material testimony regarding the repair and replacement work performed after the incident." [*Id.* at 12]. Lastly, Defendant states that both Keena and Ellsworth "have knowledge regarding causation and the scope of necessary repairs," but it does not indicate what specifically these individuals are expected to testify about. [*Id.*].

This Court observes that the witnesses may provide relevant testimony in this action. However, in the above allegations and descriptions regarding witness testimony, Defendant does not discuss with specificity the materiality of the testimony as to the precise claims between these Parties, why deposition testimony would be insufficient, or whether the named witnesses would be unwilling to come to trial voluntarily. *See generally* [*id.*]. In its reply brief, Defendant asserts that it "cited authority recognizing the presumption that non-party witnesses outside the subpoena power are unwilling to appear voluntarily." [Doc. 49 at 7]. However, Defendant has not cited any authority demonstrating that the Tenth Circuit has adopted such a presumption, and this Court did not independently find such authority.

Where a moving party fails to meaningfully discuss the unavailability or unwillingness of witnesses and does not explain why deposition testimony is unsatisfactory, courts within the Tenth Circuit have determined that witness accessibility does not weigh in favor of transfer. *See, e.g.*, *Elec. Packaging Sols., Inc. v. Dickstein Shapiro, LLP*, No. 13-cv-01636-REB-KMT, 2014 WL 884913, at *3 (D. Colo. March 6, 2014) (declining to give weight to this factor where the moving party did not discuss witness unwillingness to attend trial or explain why deposition testimony would be

unsatisfactory); *Onset Fin., Inc. v. Family Prac. of Atlanta Med. Grp., LLC*, No. 2:16-cv-00063, 2016 WL 7410576, at *3–4 (D. Utah Dec. 22, 2016) (finding that where the moving party merely alleged how each of their identified witnesses could speak to the facts of the case and did not indicate why deposition testimony would be unsatisfactory, accessibility of witnesses did not weigh in favor of transfer).

Although five witnesses identified by Defendant would be outside this Court's subpoena power if this Court denied transfer, in *Scheidt*, the lack of an available compulsory mechanism with respect to non-party witnesses did not convince the Tenth Circuit to weigh accessibility of witnesses in favor of transfer. 956 F.2d at 966. There, the moving party identified eight non-party witnesses outside the court's subpoena power and indicated that the witnesses "*may have* had pertinent testimony to present," but did not "indicate the quality or materiality of such witnesses," show "that any such witnesses were unwilling to come to trial," or indicate that "deposition testimony would be unsatisfactory." *Id.* Ultimately, the *Scheidt* court found that the moving party did not meet its burden to demonstrate inconvenience to witnesses. *Id.*; *see also Patrick Indus., Inc. v. Cont'l Cas. Co.*, No. 25-cv-00813-KG-LF, 2026 WL 184536 (D.N.M. Jan. 23, 2026) (declining to weigh accessibility of witnesses in favor of transfer despite witness locations outside the court's subpoena power because the moving party did not demonstrate witness unwillingness to attend trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary).

Here, Defendant has not meaningfully discussed: (1) the materiality of identified witness testimony; (2) why deposition testimony would not be sufficient; (3) witness unwillingness to attend trial; or (4) the necessity of compulsory processes to compel

witness attendance. *See generally* [Doc. 27]. Therefore, this Court is not persuaded to find that accessibility of witnesses weighs in favor of transfer.

Plaintiffs, meanwhile, assert that all of their "representatives and key witnesses are located in Colorado." [Doc. 39 at 15]. The witnesses identified by Plaintiffs are employees of Spectrum Retirement Communities, LLC, one of the Plaintiffs in this case. [*Id.*]. Defendant does not rebut this assertion but instead argues that Plaintiffs' reliance on the location of their own witnesses should carry "little weight" in the transfer analysis. [Doc. 49 at 8]. But for the reasons discussed above, Defendant has not persuaded this Court that alleged inconvenience of non-party witnesses outweighs the convenience of Plaintiffs' witnesses, and thus, the Court finds that this factor weighs against transfer.

**B. Accessibility to Other Sources of Proof**

Defendant argues that beyond witnesses, the physical Community building in Kansas "remains a central source of proof." [Doc. 27 at 15]. Defendant asserts that the ability of local experts to inspect the property and reach findings based on in-person observations supports transfer. [*Id.*]. Plaintiffs respond that "the sprinkler failure and the resulting property damage . . . are not disputed." [Doc. 39 at 10]. The Court respectfully agrees with Plaintiffs. Plaintiffs' allegations center on Defendant's alleged wrongdoing with respect to the resolution of claims associated with agreed-upon damage. [Doc. 14 at ¶¶ 1–6; Doc. 27 at 3]. Even if the physical condition of the Community building is considered material proof, it is unclear to this Court why photo or video evidence of the building would not suffice. *See Hirsch v. Zavaras*, 920 F. Supp. 148, 151 (D. Colo. 1996). Nor is it clear that any engaged experts would be local to Kansas. Therefore, accessibility of other sources of proof is neutral with respect to transfer.

## III. Cost of Proof and Related Factors

Defendant does not offer any argument regarding the cost of making necessary proof and relative advantages and obstacles to a fair trial beyond "the reasons discussed above" with respect to witness accessibility. [Doc. 27 at 15]. Where the record contains no evidence concerning the potential costs of litigating a case, the factor is neutral. *Bartile Roofs*, 618 F.3d at 1169; *Congo Works, LLC v. Gray & Co.*, No. 19-cv-00302-REB-KMT, 2019 WL 13036161, at *4–5 (D. Colo. Oct. 10, 2019).

## IV. Docket Congestion

Relevant to considering difficulties of court congestion are "the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Bartile Roofs*, 618 F.3d at 1169. In this action, with the exception of median time from filing to disposition, the District of Kansas has a substantially less congested docket than the District of Colorado.

| Statistic | USDC Colorado | USDC Kansas |
|---|---|---|
| Median time from filing to disposition (civil) | 7.5 months | 7.1 months |
| Median months from filing to trial (civil) | 39 months | 22.9 months |
| Pending cases per judge | 650 | 305 |
| Weighted filings per judge | 719 | 351 |

The District of Colorado has double the number of pending cases per judge and weighted filings per judge compared to the District of Kansas. Cases in Colorado also typically take a year longer than those in Kansas to proceed to trial. Where one docket is substantially less congested than the other, this factor weighs "heavily in favor of transfer." *R.J. v. Optima Health*, 649 F. Supp. 3d 1207, 1215 (D. Utah 2022). Accordingly, this factor weighs strongly in favor of transfer.

## V. Conflict of Laws

In this action, a motion to dismiss predicated on which state's law applies is at issue simultaneously with this Motion to Transfer Venue. *See* [Doc. 26]. Defendant contends that Kansas law applies to Plaintiffs' breach of contract and bad faith claims, [*id.* at 3], while Plaintiffs argue that Colorado law applies, [Doc. 40]. The Court need not determine which state's law applies at this time. In deciding whether to first address a pending motion to dismiss or a pending motion to transfer venue, federal courts tend to address the motion to transfer venue first. *See, e.g.*, *Yellow Corp. v. Int'l Bhd. of Teamsters*, No. 23-cv-01131-JAR-ADM, 2023 WL 5854672, at *1 (D. Kan. Sep. 11, 2023) (holding that a motion to transfer should be decided before a motion to dismiss due to the best interests of judicial economy); *TD Srl v. Italia Granite Supply, LLC*, No. 2:25-cv-00480-DBB-DBP, 2025 WL 3089091, at *2 (D. Utah Nov. 5, 2025) (addressing venue transfer before deciding a motion to dismiss because a venue transfer would "preclude the [transferee] court from ruling on the other issues").

In weighing the conflict of laws factor when evaluating venue transfer, "courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law." *Bartile Roofs*, 618 F.3d at 1169. However, this factor is accorded less weight in federal courts because "federal judges are qualified to apply state law." *Id.* Less weight is further accorded to this factor when legal issues are relatively simple. *Scheidt*, 956 F.2d at 966. In *Scheidt*, the legal issues implicated and categorized as relatively simple were fraud and breach of contract. *Id.* at 965. Here, the legal issues facing the court are similarly relatively simple, as they involve breach of contract and bad faith. [Doc. 14]. Federal judges in both Colorado and Kansas are capable and qualified

to apply the state law of either Colorado or Kansas to these legal issues. Therefore, this factor is neutral with respect to transfer.

## VI. Local Interests

"There is a local interest in having localized controversies decided at home." *Bailey v. Union Pac. R.R. Co.*, 364 F.Supp.2d 1227, 1233 (D. Colo. 2005) (quotation omitted). "When the merits of an action are unique to a particular locale, courts favor adjudication by a court siting in that locale." *Bartile Roofs*, 618 F.3d at 1170. Defendant argues that Plaintiffs' allegations "concern issues with ramifications for a Kansas facility, Kansas' elderly population, and Kansas' workforce," thus placing local interests in favor of Kansas. [Doc. 27 at 16]. Plaintiffs respond by arguing that the insurance agreements were negotiated, sold, and delivered in Colorado, the alleged communications denying claim coverage occurred in Colorado, and the alleged losses were realized in Colorado. [Doc. 39 at 8–9].

While the Incident giving rise to this action occurred in Kansas, the communications between the Parties and the losses sustained due to the alleged bad faith of Defendant occurred in Colorado. [*Id.*]. Therefore, the Court respectfully disagrees that Colorado has no local interest in the dispute. In any event, this is ultimately an insurance dispute arising from communications between Colorado and Kansas entities, not a situation where the merits of an action are particularly unique to either locale. *See Wade*, 2024 WL 2274085, at *7. Accordingly, this factor is neutral with respect to transfer.

## VII. Related Pending Action

The Supreme Court has stated that § 1404(a) is intended to prevent the litigation of two cases "involving precisely the same issues" in different district courts. *Cont'l Grain*

*Co. v. FBL-585*, 364 U.S. 19, 26 (1960). Courts within the Tenth Circuit have similarly acknowledged that transfer is appropriate when two cases are pending in two different courts with the same facts and claims at stake. *See Schecher*, 317 F. Supp. 2d at 1262 (allowing transfer where "nearly identical issues" were raised in a separate action); *Ervin & Assocs., Inc. v. Cisneros*, 939 F. Supp. 793, 797–98 (D. Colo. 1996) (allowing transfer where two cases with substantial legal and factual overlap were pending in two different forums).

Among other allegations of specific instances of bad faith, Plaintiffs allege that Defendant improperly handled the subrogation lawsuit it filed against JCFP in the United States District Court for the District of Kansas, titled *The Travelers Indemnity Co. v. Johnson Controls Fire Protection, L.P.*, pending under case number 2:24-cv-02601-JWL (the "Subrogation Action"). [Doc. 14 at ¶ 148]. Before this Court, Plaintiffs allege that Defendant knew or should have known that its filing of the Subrogation Action would expose Plaintiffs to liability and allege additional bad faith regarding Defendant's communications about the Subrogation Action. [*Id.* at ¶¶ 159, 172–81]. In the Subrogation Action, the principal allegations against JCFP are negligence and negligent misrepresentation related to JCFP's allegedly false statements made with respect to its repairs at the Community. Subrogation Action Complaint at ¶¶ 12, 22, 31; *Travelers Indem. Co. v. Johnson Fire Controls Prot., L.P.*, No. 24-2601-JWL, 2025 WL 3652903, at *1 (D. Kan. Dec. 17, 2025).

While the named parties in the Subrogation Action and the action before this Court are nearly identical and the Incident ultimately giving rise to both actions is the same, the actual claims at issue are substantially different. In the Subrogation Action, the primary

issue is JCFP's conduct. Here, the primary issue is Defendant's conduct with respect to Plaintiffs' insurance claims. The allegations, claims, and relief sought by the parties are different in these two cases. Ultimately, the Subrogation Action and the action before this Court represent two distinct issues. It is not clear to this Court that the outcome in the Kansas case would at all affect the outcome in the case before it. As such, this consideration does not weigh in favor of transfer.

## VII. Balancing the Factors

"The party moving to transfer . . . bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp.*, 928 F.2d at 1515. The movant must demonstrate that the balance of factors *strongly favors* transfer. *Bartile Roofs*, 618 F.3d at 1167 n.13. Here, upon evaluating all transfer factors, Plaintiffs' choice of forum and accessibility of witnesses weigh against transfer. Docket congestion weighs in favor of transfer, while the remaining factors, including accessibility of other sources of proof, cost of proof, conflict of laws, and local interests, are neutral. The related pending action in the District of Kansas is similarly neutral with respect to transfer.

"Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 1167 (cleaned up). The Tenth Circuit has also recognized that the "convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Id.* at 1169 (quotation omitted). However, where docket congestion differences between two courts are substantial, docket congestion weighs strongly in favor of transfer. *R.J.*, 649 F. Supp. 3d at 1215.

Here, Plaintiffs' choice of forum remains persuasive due to the communications, Policy negotiations, and realization of losses that occurred in Colorado. Accessibility of

witnesses similarly weighs in favor of transfer, as Plaintiffs' witnesses would be inconvenienced by transfer. While docket congestion weighs in favor of transfer, it does not overcome the strong presumption in favor of Plaintiffs' choice of forum combined with accessibility of witnesses.

Considering all of the factors addressed by Defendant, the Court finds that they weigh against transferring this case to another district. Accordingly, Defendant has not met its burden to show that transfer is appropriate under § 1404(a), and the Motion to Transfer is respectfully **DENIED**. The pending Motion to Dismiss Second and Third Claims for Relief for Failure to State a Claim, [Doc. 26], will be adjudicated in due course.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1) The Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is **DENIED**.

DATED: November 12, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge